THE PEOPLE OF THE STATE OF NEW YORK, Complainant, *v.* AUGUST CAPONIGRI, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Complainant, *v.* ABE ROSE, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Complainant, *v.* CHARLES HASKELL, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Eighth District, August 29, 1938.

*William C. Chanler, Corporation Counsel [Charles C. Weinstein* and *Bernard Newman* of counsel], for the plaintiff.

*Joseph H. Goldstein,* for the defendants.

FINEGAN, C. M. The above three cases were tried separately.

In all three cases the defendants were accused, in substance, of unlawfully crying their wares through a loud speaker system in the vicinity of the boardwalk in Coney Island, in such manner as to impair the beneficial use of the boardwalk to pedestrians using the same, in violation of article II, section 7, subdivision p, of the Rules and Regulations of the Park Department.

In the case of *People* v. *Caponigri* the attorney for the defendant moved to dismiss the information on the grounds that it failed to state facts sufficient to constitute a cause of action under article II, section 7, subdivision p, of the Rules and Regulations of the Park Department, in that the information did not accuse the defendant of doing the wrong alleged personally, but that it accused him, as manager of inducing the wrong claimed. Decision was reserved. Defendant's motion is now formally denied on the grounds that article II, section 7, subdivision p, when read with article I, section 2, subdivision a, paragraph 3, of the Rules and Regulations of the Park Department, construes the words " any person acting as crier " to include any person who causes, procures, aids or abets in the matter and in this instance the evidence clearly showed that the defendant, when he was being arrested, directed Abe Rose and Charles Haskell to continue their operation of the loud speaker in the manner in which it had been and was being operated.

The testimony establishes that there was a business being carried on upon private property abutting on the boardwalk, near Stillwell avenue, consisting of a game called "Fascination," in which balls were rolled for prizes; that said business was being conducted under the management and direction of the defendant August Caponigri; that the defendants Abe Rose and Charles Haskell assisted in the work of carrying on the said business and in so doing a loud speaker was used on the premises back from the boardwalk variously estimated at fifty to eighty-five feet; that the defendants Abe Rose and Charles Haskell both operated this loud speaker and that they used the loud speaker to instruct and advise those playing the game relative to their scores and how the game might and should be played. They further used the loud speaker to cry the alleged attractions of the game and to describe the prizes given to the winners in such a manner and in such a way that it could be clearly heard at the opposite end of the boardwalk from the premises, which boardwalk at that point is eighty feet wide.

I further find that in the use of this loud speaker the words and phrases were blared uproariously and tumultuously across the boardwalk and created a din and hullabaloo which was irritating, annoying and disturbing and caused persons to stand and obstruct the free use of the boardwalk to pedestrians using the same. It is clear, too, from the evidence, that in the use of this loud speaker the defendants intended that the voice projected therefrom should be heard by all using the boardwalk and passing in front of the premises where the game "Fascination" was being played and that in using same they were endeavoring to advertise the attractive qualities of the game and to induce persons to enter from the boardwalk to try their luck. The evidence shows the loud speaker was so constructed that it could be toned down so that its vibrations might not be heard beyond the said premises. It is clear that the defendant in each case was willfully, openly and intentionally violating article II, section 7, subdivision p, of the Rules and Regulations of the Park Department wherein it is stated:

" (p) Any person acting as crier, or advertiser through the media of voice, public address system, or other mechanical device, on beaches or boardwalks or in the vicinity of same; shall be guilty of violating these rules and regulations."

Each of the defendants here accused claims that this provision of the Rules and Regulations of the Park Department does not apply to him because he was calling his wares upon privately owned property and that the rule complained of applies only to the beaches and boardwalks, parks, streets or public property in their vicinity and not to privately owned property. Each

defendant further claims that if it is contended that this regulation forbids him, on his privately owned property abutting on the boardwalk, to cry or advertise through the media of voice or public address system, that it is void and violates article I, section 6, of the Constitution, in that it is taking private property without due process of law, and further that the said rule is invalid because it is unreasonable and arbitrary and that it is bad because of vagueness and indefiniteness.

The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use. (*Matter of Jacobs*, 98 N. Y. 98, 105.) In each of the instant cases there can be no doubt but that the enforcement of the regulation in question would lessen the income of the game called " Fascination " played upon the premises. In our congested and confused society, where human rights and property rights are often in conflict, the human rights must in all instances be preserved, fostered and protected, and the clause in the Constitution prohibiting the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the peace and tranquillity of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments. Every citizen holds his property subject to the proper exercise of police power either by the State Legislature directly, or by public or municipal corporations to which the State Legislature may delegate it. It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for their taking. (1 Dillon on Municipal Corporations, p. 212.)

The police power has been greatly extended during recent years and while the fundamental rule must be observed that there is some *evil* existent or reasonably to be apprehended, which the police power may be invoked to prevent and the remedy proposed must be generally adapted to that purpose, the limit upon conditions held to come within this rule has been greatly enlarged. The power is not limited to regulations designed to promote public health, public morals or public safety or to the suppression of what is disorderly or unsanitary, but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the People by promoting public convenience or general prosperity. (*Bacon* v. *Walker*, 204 U. S. 311.) The State may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power although

the rights of private property are curtailed. The legislative or police power is a living agency, vague and undefined in its scope, which takes private property or limits its use when great public needs require, uncontrolled by the constitutional requirement of due process of law. (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429.) The Legislature may not delegate its legislative powers. It may, however, properly authorize an executive officer to adopt reasonable rules to carry out legislation which has been enacted. (*People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387.)

In the instant case the Legislature, in creating the city of New York, delegated to it police power and gave it power to enact laws and ordinances, which, if enforced, would obviate the hubbub and confusion incident to the use of the loud speaker by each of the defendants to the annoyance of the public using the boardwalk. (*City of Rochester* v. *West*, 164 N. Y. 510.)

The city of New York has ample police power to enact laws and ordinances whereby property owners adjoining parks, boardwalks, streets, etc., could be prohibited from projecting voices from their private property on the streets, boardwalks, parks, etc., describing their wares, to the irritation, annoyance and inconvenience of people using the same. (*People* v. *Phillips*, 147 Misc. 11.)

The city of New York has the right to delegate police power to the commissioner of parks and to endow him with power to make reasonable rules and regulations for administrative purposes and to give such rules and regulations the force and effect of law. (*People* v. *Grant*, 242 App. Div. 310.) The New York City Charter gives to the commissioner of parks certain authorities, duties and powers, and authorizes him to make rules and regulations for the government and protection of public parks, boardwalks and all other property under the control of the park commissioner and declares that such rules and regulations shall have the force and effect of law.

Section 532 of the New York City Charter declares: " The commissioner shall have the power and it shall be his duty:

" 1. To have charge of the management and to be responsible for the care of all parks, parkways * * *

" 3. To maintain the beauty and utility of all parks, squares * * *

" 5. Except as otherwise provided by law, to authorize and regulate the use of and projections on * * * all streets * * * within a distance of three hundred fifty feet from the outer boundaries thereof."

Section 534 of the New York City Charter declares:

" a. The commissioner shall have the power to establish and enforce rules and regulations for the government and protection of public parks and of all property under the charge and control of the commissioner, which rules and regulations so far as practicable shall be uniform in all boroughs and shall have the force and effect of law.

" b. Any violation of the rules and regulations of the commissioner shall be triable by a city magistrate and punishable by not more than thirty days imprisonment or by a fine of not more than fifty dollars, or both."

The term " parks," as here used, includes the boardwalk in question.

The above is the full extent of the powers delegated to the commissioner of parks. He is given the management of, and is made responsible for the care of, all parks, parkways and other properties, including the boardwalk. In no manner, way or place is it specified that he has been given any power or control over private property. In no manner or place is it indicated that the commissioner of parks has power to establish and enforce rules and regulations affecting private property. If it had been the intention of the framers of the charter to give the commissioner this power, it could very easily and readily have been inserted in section 534 where he is given the power to make rules and regulations for the government and protection of public parks and all other property under the charge and control of the commissioner. It could have included private property adjoining and adjacent thereto for a distance of say three hundred and fifty feet as the use thereof may adversely affect the use of park property and property specified, or some such phrase as that, but this has not been done and nowhere in section 532 has the park commissioner been given any powers or duties with relation to private property adjoining or abutting property specified. The park commissioner in making his rules and regulations, and particularly in making regulation article II, section 7, subdivision p, where he declared that any person acting as crier through the media of voice or through a loud speaker on beach or boardwalk or in the *vicinity of same* is guilty of violating the rules and regulations, has extended this rule and regulation to private property and it constitutes an exercise of a police power which has not been given to him by the charter and which he does not possess and accordingly is a nullity in so far as the same relates to or affects private property.

Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must

be done, and what must be avoided to the end that the ordinary member of society may know how to comply with its requirements. (*People* v. *Grogan*, 260 N. Y. 130.)

The phrase " vicinity of same " is most indefinite. It is a term of such relativity as would tax the powers of an Einstein to define with any degree of precision. (*Yamhill Electric Co.* v. *McMinnville*, 130 Ore. 309; 274 P. 118.)

It is not the province of the court to read into the statutes matter which is not there regardless of how strongly the court feels that such action would serve the ends of justice. It is the duty of the court to interpret the law as written, giving to the language of the regulation the free, full, fair and correct meaning.

In the instant cases, the loud speaker was well back from the boardwalk on privately owned property. It is true that the testimony indicated that it could be and might be toned down. The corporation counsel, in his argument, emphasized this fact when he said, " Accordingly the defendants could readily have conducted their business in a legal manner, without offending the hearing of tens of thousands of people who passed their place of business on the day in question." As I read the regulation in question, which each of the defendants is accused of violating, no one is permitted to act as crier through the media of voice or loud speaker on his premises if said premises are in the vicinity of the boardwalk, regardless of how he uses his voice. He might use it ever so quietly, but so long as he cries his wares loudly enough to be heard around his own property he would be violating said regulation. Certainly that is not the intention of the commissioner of parks, and accordingly the regulation is invalid in that it fails to state some comprehensible guide as to how the defendant might use his voice or loud speaker on his private premises in the vicinity of the beach or boardwalk to avoid a penalty.

The park department, however, is not without remedy in a matter of this kind. There was clearly a violation of the anti-noise ordinance, section 435–5.0 of the Administrative Code of the City of New York, and in a very similar situation, where the facts were not nearly so strong as in the instant cases, the defendant was found guilty and punished. (*People* v. *Phillips*, 147 Misc. 11.)

The motion of the defendants' counsel to dismiss in each case must be granted; each information is dismissed and each defendant is discharged.