Beatrice S. Burstein, J.
This is an action to recover brokerage commissions. The complaint alleges, in substance, that the plaintiff entered into an agreement with the defendants to sell the latters’ home at a fixed price or what is commonly termed a “ net listing ” and that he did, in fact, procure a ready, willing and able buyer but that the defendants wrongfully failed and refused to consummate the purchase and sale transaction.
At the commencement of trial, the defendants moved to dismiss the complaint upon the ground that the relief sought is barred by section 175.19 as set forth in the Official Compilation of Codes, Bules and Begulations promulgated by the Secretary of State under section 91 (formerly § 20-a) of the Executive Law (19 NYCBB 175.19) of the State of New York and both parties agreed that a construction of the section would be dispositive of the issues involved in this action.
Summarily stated, subdivision (a) of section 175.19 defines the term “ net listing ” and subdivision (b) of the section provides that: “No real estate broker shall make or- enter into a ‘ net listing ’ contract for the sale of real property or any interest therein. ’ ’
This appears to be a case of first impression. Legislative and administrative materials to which one may look for guidance are, unfortunately, exiguous. In short, there is little, if any, useful extrinsic commentary. Unlike Federal statutes, the history of State laws must be discovered out of a variety of sources, there being no publication in New York State equivalent to the Congressional Becord (cf. Dana, Background Materials for Statutory Interpretation in New York, 14 Becord of Association of Bar of City of N. Y., 80; Brener, Legislative Intent and Extrinsic Aids to Statutory Interpretation in New York, 51 L. Lib. J. 2).
Accordingly, the court is bound by the language of the statute and of the section, notwithstanding that the application may, in a given case, produce hardship or appear to be unreasonable. The office of the court is to construe the law as it is and not as it prefers it to be. Judicial law making is an unwarranted extension of the prerogatives of a Judge (Arizona v. California, 373 U. S. 546). Mr. Justice Cardozo in his monumental “The *735 Growth of the Law ” teaches that: “ When the Legislature has spoken and declared one interest superior to another, the judge must subordinate his personal or subjective estimate of value to the estimate thus declared. He may not nullify nor pervert a statute because convinced that an erroneous axiology is reflected in its terms.” (pp. 94-95).
There is no evidence here, nor is it claimed by the defendants, that the plaintiff was motivated by a nefarious purpose nor that he was guilty of deception or sharp dealing. Nevertheless, when the plain words of a statute or a rule preclude recovery the court cannot enact exceptions. This lesson was forcefully pointed out by the United States Supreme Court in Braunstein v. Commissioner of Internal Revenue (374 U. S. 65) where the application of the Federal income tax laws to a so-called collapsible corporation was involved. Eejecting the argument that the statute could not have been intended to strike down the particular arrangement which appeared to be free of a tax avoidance objective, the Supreme Court said: “ There is no indication whatever of any congressional desire to have the Commissioner or the courts make a determination in each case as to whether the use of the corporation was for tax avoidance. Indeed, the drawing of certain arbitrary lines * * * tends to refute any such indication. ’ ’
The plain meaning of the words of subdivision (b) forecloses any exceptions. Consequently the section must be read as it is written (People v. Caponigri, 169 Misc. 9; Matter of Davis v. Sexton, 211 App. Div. 233). It seems evident that the statute and the section are calculated to prevent overreaching and unfair dealing. Hence, the clue to legislative intent must be found in the social and political climate which existed at the time the law was enacted and the evils which the statute purports to reach.
Simply stated, neither the statute nor the section contemplates nor permits a departure for extraordinary cases. If exceptions are to be created, resort must be had to the Legislature and not to the courts.
My reading of the section persuades mo that it is a proper implementation of the relevant statute. Indeed, there has been no challenge to the power of the Secretary of State to adopt the particular section. It is a familiar principle of law that the presumption of validity attaches to a quasi-legislative rule adopted by an administrative agency or officer (N. Y. Jur. Administrative Law, §§ 99-106; 1 Davis, Administrative Law, § 2.11, pp. 122-131) and since the canons of construction applicable to *736 statutes govern the interpretation of administrative rules (Vivien v. Board of Educ. Retirement System, 30 N. Y. S. 2d 73) the same presumption of regularity follows.
Finally, it has been claimed that there is an informal opinion by members of the staff of the office of the Secretary of State which implies that the case at bar is beyond the ambit of the section. While it is true that a settled administrative construction is entitled to weight (Matter of Cornell Apts. Corp. v. Corcoran, 182 Misc. 660; Matter of Jaffe v. McGoldrick, 285 App. Div. 889) it is not binding upon the court and an informal opinion is even less persuasive. My reading of the statute and the section compels the conclusion that the complaint must be dismissed.
Accordingly, judgment is rendered in favor of the defendant, dismissing the complaint.