■ In the Matter of THEODORE ROBAK, Respondent, v EDWARD V. REGAN, as Comptroller of the State of New York, Appellant. — Appeal from a judgment of the Supreme Court at Special Term (Conway, J.), entered March 3, 1983 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Comptroller regarding termination of petitioner's membership in the legislative and executive retirement plan. ¶ Petitioner was an employee of Oneida County from September 1, 1962 to April 10, 1963 and from March 20, 1967 to December 19, 1971. As such, he became a member of the State Employees' Retirement System. On December 20, 1971, petitioner became an annual employee of the State Assembly. On December 30, 1971, he filed an election to join the legislative and executive retirement plan as provided by section 80-a of the Retirement and Social Security Law. This is a special retirement plan offering higher benefits than those provided by the State Employees' Retirement System. Under the relevant statutory provisions, petitioner was to be credited with the time he had worked for the county government for the purposes of determining his ultimate retirement benefits. ¶ Petitioner continued to work for the Assembly until February 1, 1975, when he took a job with the Select Committee on Higher Education. Petitioner only kept this job until March 5, 1975. On the next day, he became an annual employee of the State Senate where he remains employed at the present time. ¶ Concerned about his retirement benefits under section 80-a, petitioner wrote to the director of the plan on April 29, 1975, who responded, by letter dated May 7, 1975, that petitioner was still covered by the section 80-a plan and would receive credit for his past government service (including his county employment) so long as he completed at least six months in his job at the Senate as an annual legislative employee by the end of 1975. ¶ In 1976, in view of certain amendments made to section 80-a (L 1976, ch 810, § 20), all Senate employees who had ever questioned their status in the plan were advised to sign another election as a precautionary measure. Petitioner complied. ¶ In the summer of 1977, after reaching the age of 55, petitioner requested an estimate of his retirement benefits under the section 80-a plan. He was informed by respondent that he was ineligible for retirement benefits under section 80-a because he had not accumulated a sufficient number of years of creditable service as required by section 80-a

(subd d, par 1) of the Retirement and Social Security Law. Respondent explained that by going to work for the Select Committee on Higher Education on February 1, 1975, petitioner's membership in the section 80-a plan had automatically ceased. Although petitioner had rejoined the plan by his second election, filed in 1976, he could not at that time be credited with his nonlegislative service with Oneida County due to section 80-a (subd a, par 7) (as amd by L 1972, ch 1013, § 1), which states that such service is not creditable for persons joining the plan after July 1, 1972. ¶ Petitioner ultimately brought this CPLR article 78 proceeding to review respondent's determination that his membership in the section 80-a plan was terminated on February 1, 1975. Special Term annulled this determination and we affirm. ¶ Initially, we note that great deference is to be paid to the interpretation of a statute by the agency charged with its enforcement so long as it is not "irrational, unreasonable, [or] inconsistent" (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 597). However, where, as here, the words of the statute are clear and the issue is solely that of its application such deference is not required (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). ¶ As outlined above, respondent ruled that petitioner's membership in the section 80-a plan ended automatically when he took a nonlegislative State job on February 1, 1975. However, respondent's sole statutory authority for this conclusion is section 80-a (subd g, par 1) of the Retirement and Social Security Law which states that only an employee with a vested retirement allowance may elect to continue section 80-a coverage after he "obtains other employment in the service of the state". Respondent concludes that since petitioner's retirement benefits had not vested at the time he took the job with the Select Committee on Higher Education (due to an insufficiency of creditable time in service), he could not elect to continue coverage under section 80-a when he changed jobs. ¶ This argument is unpersuasive. Respondent ignores the clear wording of section 80-a (subd g, par 1) which states that it applies only to an eligible legislative or executive employee who "terminates his employment" in an eligible position and thereafter "obtains other employment in the service of the state". There is no evidence here that petitioner's section 80-a membership was ever terminated by his working for the Select Committee on Higher Education, thereby necessitating an election on his part to continue section 80-a coverage. Pursuant to the relevant statutory provisions, he was covered by the plan throughout the period in question. ¶ Under section 80-a (subd a, par 2) of the Retirement and Social Security Law, a person is a qualified "annual employee" of the Legislature, covered by the retirement plan, if he is: "employed by the legislature on an annual payroll for not less than twenty-six weeks in any calendar year * * * *regardless of whether or not such service is consecutive*" (emphasis added). A look at calendar year 1975 shows that petitioner worked almost 11 months as a legislative employee, given his nonconsecutive employment by the Assembly and the Senate. Having served time in excess of the required 26 weeks, he was clearly a qualified member of the section 80-a plan for 1975, whose right to benefits during that year never lapsed. ¶ To interpret section 80-a as does respondent, i.e., by holding that petitioner automatically withdrew from the section 80-a plan when he entered nonlegislative State employment before the required 26 weeks of legislative employment had been served, would have highly irrational results. For example, had petitioner remained unemployed for the month of February, 1975 in lieu of taking a nonlegislative State job, or had he accepted a job in the private sector during this period, he would not have lost his membership in the system pursuant to respondent's interpretation of section 80-a. Yet respondent maintains that petitioner forfeited his benefits by accepting a State job before he proceeded to work the required 26 weeks for the Legislature. ¶ Since this interpretation is

at odds with the clear statutory language, it was properly annulled by Special Term. Under the statute, petitioner had continued his membership in the section 80-a plan throughout the period in question. ¶ Judgment affirmed, without costs. Mahoney, P. J., Kane, Weiss and Levine, JJ., concur.

Casey, J., dissents in a separate memorandum. Casey, J. (dissenting). Concededly, since December, 1971 and in each year thereafter, petitioner worked at least 26 weeks in legislative employment that qualified him as an "annual employee" under section 80-a (subd a, par 2) of the Retirement and Social Security Law. However, because he so qualified, he was not *ipso facto* entitled to the retirement benefits of the section 80-a plan. Since the majority's holding is based principally on this premise, I respectfully dissent. ¶ In my opinion, petitioner was required to comply with the other provisions of that statute as well, and the fact is that petitioner voluntarily interrupted his eligible legislative employment on February 1, 1975 when he accepted employment with the Select Committee on Higher Education, a nonqualifying employment. Although the majority stresses that this employment lasted only until March 5, 1975, it is significant that petitioner did not return to employment with the Assembly, but rather was employed with the Senate, an indication that his leaving the Assembly was not merely a temporary move. Having determined that petitioner's acceptance of employment with the Select Committee on Higher Education terminated his eligibility under the section 80-a retirement plan, the Comptroller then found that petitioner's return to employment with the State Senate on March 6, 1975 constituted a "re-entry" into eligible employment and that he again "became a member" of the plan when he filed his election to re-enter on July 14, 1976, when the plan opened briefly for eligible applicants. ¶ The Comptroller refused to accept petitioner's explanation that this election was filed only "to be on the safe side" and "on the advice of his supervisors", and noted that petitioner was warned when he commenced his employment with the Assembly on December 20, 1971 in the section 80-a benefits form which he signed that stated in bold print that the section 80-a retirement benefits plan "is not available to employees of Joint Legislative Committees or Temporary Commissions". From this determination of the facts, the Comptroller then applied the provisions of section 80-a (subd a, par 7) of the Retirement and Social Security Law, which provides that: "service rendered to the state, any political subdivision thereof or to a public benefit corporation for which credit is granted under the provisions of any other section of this chapter shall not be deemed to be creditable service, as herein defined, if rendered by a person who becomes a member under the provisions of this section on and *after July first, nineteen hundred seventy-two*" (emphasis added). Having concluded that petitioner again became a member of the plan after that date, the Comptroller denied petitioner credit for his prior nonlegislative service rendered as an employee of Oneida County. The Comptroller further concluded that petitioner could not claim a "vested allowance" of section 80-a benefits because 10 years of service were required for vesting and petitioner had less than nine years of service when he left the Assembly on January 31, 1975 to accept employment with the Select Committee on Higher Education. ¶ The Comptroller's interpretation of the relevant provisions of section 80-a and the application thereof to the facts of petitioner's employment as determined by the Comptroller is rational (see *Matter of Byer v New York State Employees' Retirement System,* 90 AD2d 865; *Matter of Nutt v New York State Employees' Retirement System,* 72 AD2d 898). For that reason, the determination should be confirmed (*Matter of Howard v Wyman,* 28 NY2d 434, 438).